**FILED**
CLERK, U.S. DISTRICT COURT

3/4/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____CW_____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

JACK GERSHFIELD, on behalf of himself and all other similarly situated individuals,

        Plaintiff,

   v.

TEAMVIEWER US, INC., and DOES 1–100,

        Defendant.

Case No.: SACV 21-00058-CJC(ADSx)

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [Dkt. 11]**

## I.  INTRODUCTION

Plaintiff Jack Gershfield brings this putative class action against Defendant Teamviewer US, Inc. and unnamed Does, alleging violations of California's Unfair Competition Law ("UCL") and California's Consumer Privacy Act ("CCPA").  (Dkt. 1-1 at 5 [Complaint, hereinafter "Compl."].)

On September 19, 2019, Plaintiff purchased a year-long subscription to Defendant's remote-access software.  (*Id.* ¶ 13.)  To complete the purchase, Plaintiff was required to provide his name as well as his credit card number, expiration date, and verification code.  (*Id.*)  A year later, in September 2020, Plaintiff alleges that Defendant renewed his subscription without his authorization by disclosing his private credit card information to Defendant's credit card processor.  (*Id.* ¶ 18.)  Plaintiff alleges that the unauthorized exfiltration and disclosure of his personal information to a third party violated the CCPA.  (*Id.* ¶¶ 19–20); *see* Cal. Civ. Code § 1798.150.  He also alleges that Defendant violated the UCL by, among other things, unlawfully charging him for services that he did not authorize, need, or want.  (*Id.* ¶¶ 25–37.)

Plaintiff brings his claims on behalf of all similarly situated individuals.  He defines his CCPA subclass as all of Defendant's California customers "on and after January 1, 2020[,] whose accounts, credit or debit cards were charged without [their] affirmative, explicit and unequivocal authorization."  (*Id.* § 40.)  Plaintiff defines his UCL subclass as all of Defendant's California customers "on and after December 1, 2016[,] who were charged for [Defendant's] software subscription [and] did not want, need or use said software."  (*Id.*)  Plaintiff seeks damages, an injunction preventing Defendant from renewing its customers' subscriptions without express authorization, and attorney's fees.  (*Id.* at 11–12.)

On January 11, 2021, Defendant removed the case to this Court, asserting jurisdiction under the Class Action Fairness Act ("CAFA").  (Dkt. 1 [Notice of Removal].)  Now before the Court is Plaintiff's motion to remand.  (Dkt. 11 [hereinafter "Mot."].)  For the following reasons, Plaintiff's motion is **DENIED**.[1]

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for March 15, 2021, at 1:30 p.m. is hereby vacated and off calendar.

## II.  LEGAL STANDARD

A defendant may remove a civil action filed in state court to a federal district court when the federal court would have had original jurisdiction over the action.  28 U.S.C. § 1441.  "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'"  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).  "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

## III.  DISCUSSION

Plaintiff argues that the Court lacks jurisdiction because Defendant has failed to establish that the amount in controversy exceeds CAFA's $5 million requirement.  The Court disagrees.

When a defendant removes a case to federal court, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  *Dart*, 574 U.S. at 87.  But when "the plaintiff contests, or the court questions, the defendant's allegation" and "both sides submit proof," the defendant must prove the amount in controversy by a preponderance of the evidence.  *Id.*; *see Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (When one party "contests

the truth of [the opposing party's] factual allegations, . . . the responding party must support her jurisdictional allegations with 'competent proof' . . . under the same evidentiary standard that governs in the summary judgment context."). "[T]he defendant's showing on the amount in controversy may rely on reasonable assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

Defendant presents evidence that CAFA's amount-in-controversy requirement is satisfied because Plaintiff's CCPA claim alone places at issue over $6.5 million in statutory damages. Plaintiff alleges that when Defendant automatically renewed its customers' software subscriptions, Defendant violated the CCPA by accessing and exfiltrating these customers' personal credit card information and disclosing that information to Defendant's credit card processors without authorization. (*Id.* ¶¶ 18–19); *see* Cal. Civ. Code § 1798.150. Defendant provides evidence that it processed over 8,819 renewal orders by California users of Defendant's software. (Dkt. 15-3 [Declaration of Arthur Garcia] ¶ 4.) Because the CCPA authorizes statutory damages of up to $750 per consumer per incident, Defendant calculates that the amount in controversy is over $6.5 million. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("[C]ourts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met.").

Plaintiff argues that Defendant's calculations are flawed because the CCPA subclass only includes Defendant's customers who were "charged without the customers' affirmative, explicit and unequivocal authorization." (See Compl. ¶ 40.) As a result, Plaintiff contends that only automatic subscription renewals give rise to a CCPA claim while manual renewals require authorization and thus do not. (*See* Mot. at 7–8.) But Plaintiff specifically alleges that Defendant would automatically renew its customers subscriptions without their authorization and no evidence indicates that any significant portion of the renewals cited by Defendant were "affirmative[ly], explicit[ly], and

unequivocal[ly]" authorized by Defendant's subscribers.  (Compl. ¶¶ 15, 18–19, 40.)
Furthermore, "[t]he amount in controversy is simply an estimate of the total amount in
dispute, not a prospective assessment of defendant's liability."  *Lewis v. Verizon
Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

Defendant's calculations also omit both attorney's fees and Plaintiff's UCL claim,
which is brought on behalf of all of Defendant's California customers "after December 1,
2016 and who were charged for [Defendant's] software subscription" and "did not want,
need or use said software."  (Compl. ¶ 40.)  In light of Defendant's calculations on
Plaintiff's CCPA claim, its potential liability on Plaintiff's UCL claim, and attorney's
fees, the Court concludes that Defendant has relied on reasonable assumptions to prove
by a preponderance of the evidence that the amount in controversy meets CAFA's $5
million requirement.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiff's motion to remand is **DENIED**.

DATED: March 4, 2021

_____

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE