RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
ADAM M. KAPLAN (S.B. #298077)
akaplan@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701

Attorneys for Defendant
TEAMVIEWER US, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK GERSHFELD, individually, and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>TEAMVIEWER US, INC., and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 8:21-cv-00058-CJC-ADS<br><br>**DEFENDANT TEAMVIEWER US, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: July 12, 2021<br>Time: 1:30 p.m.<br>Judge: Honorable Cormac J. Carney<br>Courtroom: 9B |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on July 12, 2021, at 1:30 p.m. or as soon thereafter as the

4

matter may be heard, in the United States District Court, Central District of California, located at

5

the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street,

6

Courtroom 9B, before the Honorable Cormac J. Carney, Defendant TeamViewer US, Inc.

7

("TeamViewer") will, and hereby does, move the Court for an order dismissing Plaintiff Jack

8

Gershfeld's First Amended Complaint (Dkt. 20, "FAC") under Federal Rule of Civil Procedure

9

12(b)(6).

10

Specifically, TeamViewer seeks an order: (1) dismissing the claim under the California

11

Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100 *et seq.*, because Plaintiff does not

12

allege facts sufficient to plead a claim under that statute, and (2) dismissing the claim under the

13

California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, because

14

Plaintiff does not plead any unlawful or unfair business practice by TeamViewer.

15

This Motion is based on the Notice of Motion and Motion, the accompanying Memorandum

16

of Points and Authorities and Request for Judicial Notice, the Declaration of Helaine de Tomasi,

17

the papers and records on file in this action, and such other matters as may be presented to the

18

Court.

19

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took

20

place on May 4, 2021.

21

22

Dated: May 11, 2021

O'MELVENY & MYERS LLP

23

By: */s/ Randall W. Edwards*
Randall W. Edwards

24

Attorneys for Defendant
TEAMVIEWER US, INC.

25

26

27

28

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL BACKGROUND .......................................................................... 3

    A.      TeamViewer's Software and Renewal Policy ...................................... 3

    B.      Plaintiff's Initial Purchase of TeamViewer's Software ....................... 3

    C.      Plaintiff's Claims ................................................................................. 7

III.    LEGAL STANDARD ..................................................................................... 7

IV.     PLAINTIFF'S CCPA AND UCL CLAIMS MUST BE DISMISSED ........... 8

    A.      No "Data Breach" Under the CCPA ..................................................... 8

    B.      Plaintiff's UCL Claims Fail ................................................................ 9

        1.      Plaintiff's UCL "Unlawful" Claim Must be Dismissed ........... 10

        2.      Plaintiff's UCL "Unfair" Claim Must Be Dismissed ............... 17

V.      CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arnold v. Hearst Mag. Media, Inc.*,
  2020 WL 3469367 (S.D. Cal. June 25, 2020) .......................................... 11, 12, 15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 8, 10

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ................................................................................. 8

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ............................................................................. 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 8, 10

*Blash v. Wells Fargo Bank*,
  2015 WL 12791376 (C.D. Cal. Feb. 26, 2015) ..................................................... 20

*Buley v. Homecomings Fin., LLC*,
  2016 WL 6138420 (C.D. Cal. Apr. 22, 2016) ....................................................... 18

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ............................................................................... 20

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) ..................................................................... 2, 11, 17

*Farmers v. Super. Ct.*,
  2 Cal. 4th 377 (1992) ........................................................................................... 10

*Hadley v. Kellogg*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........................................................... 10, 19

*Hall v. Time, Inc.*,
  2020 WL 2303088 (C.D. Cal. Mar. 13, 2020) ......................................... 2, 12, 13, 14

*Hall v. Time, Inc.*,
  2019 WL 8107879, at *4 (C.D. Cal. Sept. 24, 2019) ............................................. 15

*Hanich v. CitiMortgage, Inc.*,
  2015 WL 3889617 (C.D. Cal. June 24, 2015) ...................................................... 20

*Indus. Bank of Korea v. ASI Corp.*,
  2018 WL 6164317 (C.D. Cal. Oct. 4, 2018) ......................................................... 18

*Knowles v. Arris Int'l PLC*,
  2019 WL 3934781 (N.D. Cal. Aug. 20, 2019) ...................................................... 19

*Lopez v. YP Holdings, LLC*,
  2019 WL 6354387 (C.D. Cal. July 9, 2019) ......................................................... 14

*McCoy v. Alphabet, Inc.*,
  2021 WL 405816 (N.D. Feb. 2, 2021) ................................................................. 1, 9

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ................................................................................. 8

*McKee v. Audible*,
  2017 WL 7388530 (C.D. Cal. Oct. 26, 2017) ................................................. passim

*Patt v. Antech Diagnostics, Inc.*,
  2019 WL 6654078 (C.D. Cal. July 30, 2019) ....................................................... 19

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Peterson v. Cellco P'ship,*
164 Cal. App. 4th 1853 (2008) ................................................... 17

*Rohg Ind. Corp. v. Moore's Machine Co.,*
2014 WL 12695936 (C.D. Cal. Jan. 9, 2014) ............................. 10

*Ruberson v. Gerdau Reinforcing Steel,*
2020 WL 3891679 (C.D. Cal. Apr. 10, 2020) ............................ 19

*Schnall v. Hertz Corp.,*
78 Cal. App. 4th 1144 (2000) ............................................. 2, 18

*Shroyer v. New Cingular Wireless Servs., Inc.,*
622 F.3d 1035 (9th Cir. 2010) ........................................ 11, 18

*Stanwood v. Estee Lauder,*
2012 WL 12888833 (C.D. Cal. June 28, 2012) ........................ 10

*Teradyne, Inc. v. Astronics Test Sys., Inc.,*
2020 WL 8173024 (C.D. Cal. Nov. 6, 2020) ............................ 18

*Wright v. Charles Schwab & Co., Inc.,*
2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) ...................... 17, 20

**Statutes**

Cal. Bus. & Prof. Code § 17602(a)(1) ................................... 11

Cal. Civ. Code § 1798.150 ....................................................... 7

Cal. Civ. Code § 1798.150(a)(1) ........................................... 7, 8

**Other Authorities**

4 Witkin, Summary 11th Sales § 354 (2020) ........................... 10

Cal. Prac. Guide Privacy Law Ch. 2-C § 2.600 (Mar. 2020) ........ 8

Cal. Prac. Guide Privacy Law Ch. 3-B § 3:271-72 ..................... 7

E-Commerce & Internet Law § 27.08[10][A] (2020) .................. 7

1    **I.      INTRODUCTION**

2          Plaintiff's FAC is fundamentally inconsistent with California law, and basic judicially

3    noticeable facts about his purchase and use of TeamViewer's "remote access" software show that

4    TeamViewer fully complied with all applicable laws.   Plaintiff bought a subscription to

5    TeamViewer's software in September 2019, and per the terms of that subscription (which were

6    explained to Plaintiff *multiple* times) since he did not cancel it his subscription automatically

7    renewed when his 12-month initial term expired.   On these alleged facts, all of Plaintiff's claims

8    fail.  His claim that charging his credit card in the ordinary course of business was a violation of

9    the CCPA is nonsense because Plaintiff identifies nothing close to the kinds of "security breaches"

10   that statute covers.  And his UCL claim, premised on a supposed lack of notice of the auto-renewal

11   policy, is based on boilerplate assertions that lack any clear or specific factual allegations.  That is

12   because the actual facts (which are judicially noticeable) conclusively debunk Plaintiff's claims.

13   Plaintiff was told *at every step of the purchase process* that his subscription would renew

14   automatically unless canceled, including through (1) the user agreement he accepted before his

15   purchase; (2) multiple messages displayed on TeamViewer's website during the purchase process;

16   (3) the invoice he received after his purchase; and (4) the reminder email he received before his

17   subscription renewed. *See* Declaration of Helaine de Tomasi in Support of TeamViewer's Request

18   for Judicial Notice in Support of Motion to Dismiss ("De Tomasi Decl."), Exs. A-D.  In short,

19   Plaintiff was told *multiple* times that his subscription would renew and he was given *multiple*

20   opportunities to cancel before renewal.  Consequently, all of Plaintiff's claims must be dismissed

21   as a matter of law.

22          ***First***, the CCPA's private right of action applies only to data breaches resulting from

23   deficient security practices. *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2,

24   2021) (dismissing CCPA claim because "there are no allegations of a security breach in this case").

25   But Plaintiff does not allege any security breach here.  Plaintiff also fails to plead ***any*** facts

26   describing what "security procedures and practices," in his view, were improperly maintained,

27   much less how TeamViewer's routine processing of his renewal under the terms of his original

28   purchase agreement could constitute "unauthorized" access or disclosure in the first instance.

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

***Second***, Plaintiff has not pled facts to show any predicate violation required for his claim under the UCL's "unlawful" prong." Plaintiff contends TeamViewer failed to comply with § 17602 of California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600 *et seq.*, by failing to adequately disclose its auto-renewal policy prior to purchase, failing to obtain his consent to that policy, and failing to give him an easy-to-use method for cancelling his subscription prior to renewal.  But, first, Plaintiff alleges ***no*** facts to support those allegations, which alone is fatal to his claim.  *McKee v. Audible*, 2017 WL 7388530, at *21 (C.D. Cal. Oct. 26, 2017).  Nor could he—as judicially noticeable facts clearly show, TeamViewer has fully complied with the ARL in all respects.  *Hall v. Time, Inc.*, 2020 WL 2303088, at *3 (C.D. Cal. Mar. 13, 2020) (Carney, J.).  And Plaintiffs' arguments that TeamViewer violated the UCL's "unlawful" prong because TeamViewer was "unjustly enriched" by Plaintiff's renewal payment and charged "unconscionable prices" likewise fail: "unjust enrichment" is not a separate claim under California law, let alone one that could be a predicate violation under the UCL.  In any event, it cannot be maintained where (as here) the parties' relationship is governed by contract.  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010).  And Plaintiff's conclusory allegation that TeamViewer's subscription price was "unconscionable" is legally deficient on its face—and also fails because Plaintiff could have simply cancelled his subscription to avoid the renewal charge.  *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1161 (2000).

***Finally***, Plaintiff's claim under the UCL's "unfair" prong fails because it merely duplicates the "unlawful" prong claim, and it falls along with that claim.  The conduct that Plaintiff contends was "unfair" is identical to the conduct he asserts was "unlawful."  *See* FAC ¶¶ 26-33, 34-36.  In any event, TeamViewer's alleged conduct (*i.e.*, charging customers automatic renewals of software subscriptions per the terms of TeamViewer's contract) does not qualify as "unfair" under any applicable standard.

Plaintiff does not and cannot plead any viable claim against TeamViewer.  This misguided litigation should end.

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

## II.      FACTUAL BACKGROUND

### A.      TeamViewer's Software and Renewal Policy

TeamViewer provides software that allows users to remotely access and control computers and other devices.  For commercial users, TeamViewer's software can be purchased via annual subscription.  Per the terms of TeamViewer's End-User License Agreement ("EULA"), those subscriptions are renewed automatically at the expiration of each annual period unless "either party notifies the other party no less than twenty-eight (28) days prior to the end of the Initial Term or any Renewal Term that it has elected not to renew."  De Tomasi Decl., Ex. A § 13.1.  The EULA further explains that users have the option to terminate their subscriptions by letter, fax, or email, or by contacting Customer Support at www.teamviewer.com/support.  *Id.* § 13.3.

### B.      Plaintiff's Initial Purchase of TeamViewer's Software

Plaintiff purchased his initial software subscription on September 19, 2019 through a simple three step process on TeamViewer's website.  First, on an "Order Details" page, Plaintiff entered his personal information, selected a payment method (but did not make a payment), and checked a box agreeing that his purchase was made "according to the TeamViewer End-User License Agreement":

1
2
3
4
5
6
7
8
9
10
11



12   *Id.,* Ex. B.  The EULA in effect at the time of Plaintiff's purchase was hyperlinked directly above

13   the "Proceed to Checkout" button (shown above) and stated that the Software subscription "has an

14   initial term of twelve (12) months ('Initial Term') and shall subsequently be renewed automatically

15   for additional periods of twelve (12) months (each a 'Renewal Term'), unless either party notifies

16   the other party no less than twenty-eight (28) days prior to the end of the Initial Term or any

17   Renewal Term that it has elected not to renew."  *Id.,* Ex. A § 13.1.

18
19
20
21
22
23
24
25
26
27
28

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

Second, after clicking "Proceed to Checkout," Plaintiff saw a "Summary" page which again made clear—in bold font, directly above "Continue to Payment"—that "Your **subscription will automatically renew** every 12 months, unless you terminate your contract at least 28 days before the end of the initial term or any renewal term":



*Id.*, Ex. B.  Third, after clicking "Continue to Payment," Plaintiff was prompted to enter his credit card and related information and click "submit," thereby completing the purchase.  *See* FAC ¶ 13.[1]

Plaintiff purchased his original subscription using a discount code that gave him 15% off the regular $588.00 price for the first year, which is why he paid $499.80 for the first year of his subscription.  FAC ¶ 13; De Tomasi Decl., Ex. C.  As the invoice Plaintiff received for his purchase (shown below) explained, "the special price of $499.80 is only valid until 18-Sep-2020.  Hereafter, you will be charged the regular price of $588.00." That invoice also reminded Plaintiff—again in bold font—that "**The license term of the subscription is automatically extended for another 12**

---

[1] In his FAC, Plaintiff omits the first two steps of the purchase flow, providing a screenshot of only the last (third) step.  *See* FAC ¶ 13.

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

1   **months if not cancelled in written form 28 days prior to expiry**":



16   *Id.*, Ex. C.  Plaintiff also received an email notification on July 21, 2020 that reminded him

17   that his "subscription will continue to automatically renew," unless canceled by contacting

18   TeamViewer "by submitting a ticket" that was hyperlinked directly in the email.  *See id.*, Ex. D.  In

19   short, Plaintiff was told every step of the way that his original purchase was for a year-long

20   subscription (at a discounted price), and that the subscription would be renewed automatically each

21   year unless canceled before the end of the initial term.[2]

22   Despite those repeated messages, Plaintiff did not cancel his subscription before the

23   expiration of the first one-year period.  *See* FAC ¶¶ 17-18 ("Plaintiff used the Software for about 6

---

[2] In addition to the other sources noted above, TeamViewer's website has an FAQ section reminding users that Software subscriptions "will automatically renew every 12 months from your purchase date," and provides instructions for canceling.  *See* https://www.teamviewer.com/en-us/buy-now/ (Q: "Will my subscription automatically renew?" A: "Yes.  In order to avoid service interruptions, your annual subscription will automatically renew every 12 months from your purchase date"; Q: "How do I cancel my subscription?" A: "For your security, all contract termination must be submitted through a support ticket [hyperlink] or in written or text form, at least 28 days before the end of the initial term or any renewal term.").

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

months and then discontinued using it" without cancelling his subscription prior to the renewal charge). As a result, Plaintiff was charged a one-year renewal fee in normal course via TeamViewer's credit card processer on September 21, 2020. *Id.* ¶ 18. After unsuccessfully demanding a refund and appealing the renewal charge to his credit card company (*id.* ¶ 20), Plaintiff filed this suit.

### C.     Plaintiff's Claims

Plaintiff filed his original complaint against TeamViewer on December 1, 2020 and his FAC on March 7, 2021. Dkts. 1-1, 20. In the FAC, Plaintiff claims that TeamViewer violated the CCPA and UCL by charging a renewal fee after his one-year automatically renewable subscription had elapsed. FAC ¶¶ 5, 13, 18. For his CCPA claim, Plaintiff alleges TeamViewer failed to maintain "reasonable security procedures and practices" over his personal information to prevent "unauthorized access and infiltration" when TeamViewer had its standard credit processor (Adyen Inc.) process Plaintiff's renewal charge after he failed to cancel his subscription. *Id.* ¶¶ 1, 11-23. Plaintiff never explains, however, what "security procedures and practices" were deficient, let alone how TeamViewer's routine processing of his credit card under the terms of his original automatic renewal agreement constitutes "unauthorized" access.

For his UCL claim, Plaintiff asserts violations of the UCL's "unlawful" and "unfair" prongs. *Id.* ¶¶ 15-38. He contends that TeamViewer violated the "unlawful" prong by deviating from requirements in ARL § 17602 by supposedly failing to clearly convey the automatic renewal terms and obtain Plaintiff's consent to the renewal. *Id.* He also says that TeamViewer was "unjustly enriched" by Plaintiff's renewal and that the renewal fee was "unconscionable." *Id.* As to his UCL "unfair" claim, Plaintiff says without explanation that charging Plaintiff for a renewal to a subscription that he did not cancel "is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers" with no countervailing benefit, and "contrary to the California Legislature's intent" in ARL § 17600. *Id.* ¶¶ 34-36.

### III.     LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate where there is either a "lack of a cognizable legal theory or the absence of sufficient facts under a cognizable legal theory." *Balistreri v.*

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

*Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss."  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Thus, the Court must not assume the truth of legal conclusions merely because they are pled in the form of factual allegations, nor should it accept as true allegations contradicted by judicially noticeable facts.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

## IV.    PLAINTIFF'S CCPA AND UCL CLAIMS MUST BE DISMISSED

Plaintiff's CCPA and UCL claims fail as a matter of law.  First, the CCPA's private right of action under which Plaintiff purports to sue (Cal. Civ. Code § 1798.150) applies *only* to data breach cases, not to cases like this one in which a plaintiff challenges the *routine* processing of his credit card information under the terms of his original purchase.  Second, Plaintiff's UCL claim is based on the unsupportable view—contradicted by judicially noticeable material—that TeamViewer failed to notify Plaintiff of and obtain his consent to the automatic renewal terms.

### A.    No "Data Breach" Under the CCPA

Plaintiff's CCPA claim is based on conduct that is not covered by the CCPA.  The CCPA's private right of action is "extremely limited," providing a remedy only when certain personal information is subject to "unauthorized access and exfiltration, theft, or disclosure" as a result of a business's failure to maintain "reasonable security procedures and practices."  Cal. Civ. Code § 1798.150(a)(1). *See also* Cal. Prac. Guide Privacy Law Ch. 3-B § 3:271-72.  This remedy—which requires Plaintiff to show both "unauthorized" access and deficient "security procedures and practices"— applies only to data breaches.  *E.g.*, *McCoy*, 2021 WL 405816 at *8 (no CCPA claim since § 1798.150's private right of action is "related to personal information security breaches" and "there are no allegations of a security breach in this case"); E-Commerce & Internet Law § 27.08[10][A] (2020) ("private right of action created by the CCPA may be brought *only for data breaches*"); Data Security & Privacy Law (Sept. 2020) (CCPA "creates a private right of action and statutory damages for persons whose personal information is *compromised by a data breach*");

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

1   Cal. Prac. Guide Civ. Pro Trial Claims & Def. Highlights (Oct. 2020 Update) ("CCPA creates a

2   limited private right of action" if personal information "*is subject to an unauthorized data breach*");

3   Cal. Prac. Guide Privacy Law Ch. 2-C § 2.600 (Mar. 2020) ("Before the [CCPA] …, no California

4   law other than the Customer Records Act … afforded a claim for *a data breach* resulting in injury

5   to individuals or entities.").

6         Plaintiff has not pled (and cannot plead) any data breach here.  Instead, his CCPA claim

7   purports to challenge processing his credit card in the normal course through TeamViewer's regular

8   credit card processor (Adyen Inc.) after Plaintiff admittedly failed to cancel his subscription despite

9   multiple warnings and opportunities to do so.  *E.g.*, FAC ¶¶ 17-20; Section II, *supra*.  Plaintiff's

10  failure to plead a data breach alone dooms his CCPA claim.  *E.g.*, *McCoy*, 2021 WL 405816, at *8

11  (no CCPA claim where "there are no allegations of a security breach in this case"); Cal. Civ. Code

12  § 1798.150(a)(1).

13        Plaintiff's CCPA claim also fails because he does not even *attempt* to plead any *facts* to

14  show a violation of the CCPA—instead, Plaintiff just parrots the statutory language of the CCPA

15  (FAC ¶¶ 1, 11, 18-19 ("TeamViewer had a duty to implement and maintain appropriate reasonable

16  security procedures and practices" such that his personal information "is not accessed, exfiltrated

17  and disclosed" without authorization).  Plaintiff pleads ***no*** facts describing what "security

18  procedures and practices," were improperly maintained, much less how processing a renewal

19  charge under the terms of an automatic renewal agreement when Plaintiff failed to cancel his

20  subscription could plausibly be viewed as "unauthorized" access or disclosure in the first instance.

21  Of course, merely reciting statutory language without pleading the supporting facts cannot state a

22  claim under any cause of action.  *E.g.*, *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555

23  (plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements

24  of a cause of action will not do").

25        In short, Plaintiff has pled neither a cognizable legal theory under the CCPA (i.e., a data

26  breach), nor facts to support such a theory, requiring dismissal as a matter of law.

27      **B.**    **Plaintiff's UCL Claims Fail**

28        Plaintiff's UCL claims under the "unlawful" and "unfair" prongs fare no better.

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

TeamViewer addresses each claim in turn.

### 1.      Plaintiff's UCL "Unlawful" Claim Must be Dismissed

Plaintiff has failed to plead a predicate violation to state a UCL "unlawful" claim because he alleges no facts establishing any predicate violation of any other law.  The UCL "unlawful" prong "borrows violations of other laws and treats these violations … as unlawful practices." *Farmers v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992); *Hadley v. Kellogg*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017); *Rohg Ind. Corp. v. Moore's Machine Co.*, 2014 WL 12695936, at *2 (C.D. Cal. Jan. 9, 2014); *Stanwood v. Estee Lauder*, 2012 WL 12888833, at *3 n.4 (C.D. Cal. June 28, 2012) ("Plaintiffs' UCL claim under the 'unlawful' prong … fails because they do not assert a viable predicate statutory violation.").  Here, Plaintiff's claim is premised on alleged (1) violations of ARL § 17602, and (2) common law principles of "unjust enrichment" and against "charging unconscionable prices."  FAC ¶¶ 26-33.  But none of those theories can support an "unlawful" UCL claim.

As a preliminary matter, Plaintiff's claims based on the ARL all fail because, once again, he simply parrots statutory language without pleading ***any*** facts concerning "the content of disclosures he alleges [TeamViewer] includes during the sign-up process in the FAC."  *McKee*, 2017 WL 7388530, at *21; *Arnold v. Hearst Mag. Media, Inc.*, 2020 WL 3469367, at *7 (S.D. Cal. June 25, 2020) (motion to dismiss granted where plaintiff "relies upon the conclusory allegation that, on information and belief, the order forms 'did not contain clear and conspicuous disclosure of automatic renewal offer terms'" but "fails to allege any fact to support her claim").  That is because Plaintiff cannot plead those facts: as judicially noticeable facts show, TeamViewer fully complied with all aspects of the ARL.

Plaintiffs' common law claims, meanwhile, fail because "unjust enrichment" is not an independent cause of action, nor is it a remedy available where (as here) a contract governs the parties' relationship.  *Durell*, 183 Cal. App. 4th at 1370.  And his argument that TeamViewer's renewal price was "unconscionable" is insufficient to support a UCL "unlawful" claim as a matter of law, *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (common law claim insufficient under UCL's "unlawful" prong), and Plaintiff fails to plead any

1   facts or provide any legal support otherwise.

2         **a.**     **No Violation of ARL § 17602**

3        As set out below, TeamViewer's practices easily meet all of the specific disclosure and

4   authorization requirements that businesses must comply with to operate an automatic renewal

5   practice for consumer purchases.  As this Court has explained, the "purpose of the ARL" is "to

6   ensure that consumers consent to ongoing charges for good and services." *Hall*, 2020 WL 2303088,

7   at *3.  ARL § 17602 sets forth certain technical requirements to ensure that consumers have notice

8   of automatic renewal terms, affirmatively consent to those terms, and are provided an

9   acknowledgment of the renewal agreement. *Id.*; 4 Witkin, Summary 11th Sales § 354 (2020).  Here,

10  Plaintiff contends TeamViewer violated ARL §§ 17602(a)(1), (a)(2), (a)(3) and (b)–(d).[3]  FAC ¶¶

11  26-33.  But the facts he alleges come nowhere near showing a violation of any of those provisions.

12          *(1)*     *§ 17602(a)(1)*

13       Section 17602(a)(1) requires a business to "present the automatic renewal offer terms … in

14  a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in

15  visual proximity to … the request for consent to the offer."  In his FAC, Plaintiff offers a boilerplate

16  recitation of the statutory language of § 17602(a)(1) but pleads **no** facts applying that standard to

17  his purchase, let alone showing a violation.  FAC ¶ 28.  By itself, that is fatal to his claim. *McKee*,

18  2017 WL 7388530, at *21 (plaintiff did "not sufficiently detail the content of disclosures he alleges

19  [defendant] includes during the sign-up process" for § 17602 claim); *Arnold,* 2020 WL 3469367,

20  at *7 (motion to dismiss granted where plaintiff "relies upon the conclusory allegation that, on

21  information and belief, the order forms 'did not contain clear and conspicuous disclosure of

22  automatic renewal offer terms'" but "fails to allege any fact to support her claim").

23       There is a reason Plaintiff has not pleaded facts to support his boilerplate assertions: the

24  judicially noticeable facts show that TeamViewer clearly satisfied § 17602(a)(1).  Plaintiff was

25  **repeatedly** provided clear and conspicuous notice of the automatic renewal terms before his

26  purchase.  Before purchasing his subscription, Plaintiff was told explicitly on the "Order Details"

27
28  [3] Plaintiff cites § 17602(b) in both ¶¶ 31 and 32 of his FAC.  That appears to be an error.  The statutory language he recites in ¶ 32 (regarding the option to "terminate the automatic renewal exclusively online") relates to § 17602 subsection (c), not (b).

page (directly above the "checkout" button) that his purchase was governed by the EULA, which states that subscriptions "shall subsequently be renewed automatically" for 12-month terms unless canceled.  De Tomasi Decl., Ex. A § 13.1; *supra* Section II.  He was then shown in bold font (on the purchase "Summary Page," directly above the "Continue to Payment" button) that "Your **subscription will automatically renew** every 12 months, unless you terminate your contract at least 28 days before the end of the initial term or any renewal term."  De Tomasi Decl., Ex. B.  TeamViewer thus plainly "present[ed] the automatic renewal offer terms … in a clear and conspicuous manner."  Cal. Bus. & Prof. Code § 17602(a)(1).

Indeed, the facts alleged in Plaintiff's FAC are nearly identical to those that this Court found in *Hall* were insufficient to state a claim under § 17602(a)(1).  2020 WL 2303088, at *3.  There, this Court rejected a claim that notice of automatic renewal terms had not been "clearly and conspicuously" disclosed where the "subscription offer" that Plaintiff saw contained "a notice clearly stating that '[a]ll magazine subscriptions will automatically renew annually,'" which was "placed directly above the 'checkout now' button, which Plaintiff clicked to proceed with her subscription."  *Id.*  On those facts, this Court held that defendant's notice "plainly complied with [§ 17602(a)(1)] as a matter of law."  *Id*.  Here, too, TeamViewer's website stated "Your **subscription will automatically renew** every 12 months" in bold font directly above the "Continue to Payment" button, and Plaintiff's claim fails for the same reasons as in *Hall*.

### *(2)   § 17602(a)(2)*

Plaintiff has likewise failed to show a violation of § 17602(a)(2).  Section 17602(a)(2) requires "affirmative consent to the agreement containing the automatic renewal offer terms" before charging a consumer's credit card for the renewal.  Here, Plaintiff says he "never gave TeamViewer an affirmative and unequivocal consent to charge his credit card."  FAC ¶ 29.  But again, he pleads no facts (e.g., descriptions of the signup or checkout process) to support that generic assertion, and as set out above TeamViewer conspicuously and repeatedly told Plaintiff that his subscription would renew automatically each year, and he then consented to those terms by submitting his payment information and completing the purchase.  Section II, *supra*.  On these facts, TeamViewer's signup process clearly complied with § 17602(a)(2).

Again, the Court's decision in *Hall* is directly on point.  In *Hall*, this Court rejected similar allegations under § 17602(a)(2), and held that where the defendants "conspicuously disclosed their [magazine] renewal policy in plain language," the plaintiff "affirmatively consented to the agreement containing those terms by entering her payment information and submitting her order[.]" *Hall*, 2020 WL 2303088, at *4; *see also Lopez v. YP Holdings, LLC*, 2019 WL 6354387, at *4 (C.D. Cal. July 9, 2019) ("Plaintiff fails to allege sufficient facts for a violation of the ARL under any of the three prongs because she expressly agreed to the terms of the agreement, including the automatic renewal provision [which] explicitly states that '[t]he terms of this Agreement will automatically renew, unless terminated by as set forth in this Agreement …'").  Here, as in *Hall*, Plaintiff "clicked through two separate pages containing the automatic renewal [term] before deciding to purchase" his subscription (first in the EULA on the "Order Details" page and then on the "Summary" page which said that his subscription "**will automatically renew**").  *See* Section II, *supra*.  In short, since Plaintiff was provided ample notice of and "affirmatively consented to the agreement containing the automatic renewal offer terms," his claim based on § 17602(a)(2) fails on its face.  *Hall*, 2020 WL 2303088, at *4.

### *(3)      § 17602(a)(3), (b)-(c)*

Plaintiff also fails to show a violation of § 17602(a)(3) or § 17602(b)-(c).  Section 17602(a)(3) requires that users receive an "acknowledgment that includes the automatic renewal offer terms," as well as the "cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer."  Section 17602(b), in turn, requires that a business offer "a toll-free telephone number, electronic mail address, a postal address … or another cost-effective, timely, and easy-to-use mechanism for cancellation" described in the acknowledgement provided to consumers under § 17602(a)(3).  And Section 17602(c) further requires a way to cancel a renewable subscription online.

Here, Plaintiff parrots the text of §§ 17602(a)(3) and 17620(b)-(c), but, once again, does not actually claim he was denied an acknowledgment, state what the acknowledgment said, or explain how it failed (in his view) to satisfy these statutory requirements.  *McKee*, 2017 WL 7388530 at *21; *Arnold*, 2020 WL 3469367 at 7.  As before, Plaintiff cannot plead those facts: after his

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

September 2019 purchase, Plaintiff received an invoice acknowledging the purchase and setting out the subscription period (September 19, 2019 to September 18, 2020), the discounted price that Plaintiff paid, the regular non-discounted price that would be due upon renewal, and a reminder that his subscription "is automatically extendable for another 12 months if not cancelled in written form 28 days prior to" the expiration of the term.  *Supra* Section II.B; De Tomasi Decl., Ex. C. And then approximately 60 days before his subscription was to renew, TeamViewer sent Plaintiff an **additional** email reminding him that his subscription would automatically renew unless he contacted TeamViewer to cancel by "submitting a ticket" via a hyperlink to TeamViewer's website set out in the reminder email.  De Tomasi Decl., Ex. D.  If he wished to cancel his subscription, Plaintiff simply had to click on the link in the reminder email that TeamViewer sent.  *Hall v. Time, Inc.*, 2019 WL 8107879, at *4 (C.D. Cal. Sept. 24, 2019).[4]

In other words, TeamViewer provided an "acknowledgment that includes the automatic renewal offer terms," as well as the "cancellation policy," "information regarding how to cancel in a manner that is capable of being retained by the consumer," and an "easy to use," online mechanism for cancellation.  On those facts, Plaintiff cannot adequately allege a UCL claim based on TeamViewer's purported violations of § 17602(a)(3) or §§ 17602(b)-(C) of the ARL. *Hall*, 2019 WL 8107879 at *4 (no ARL violation where acknowledgment postcard "explained in plain language that Plaintiff's subscription would be automatically renewed unless and until Plaintiff cancelled her subscription" and "provided information about how and when she could cancel, with hyperlinks to the relevant contact information").

### *(4)   § 17602(d)*

Finally, Plaintiff's claim based on § 17602(d) should be rejected as well.  Section 17602(d) requires that for any "material change" to the terms of the automatic renewal, the business must "provide the consumer with clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer."

---

[4] TeamViewer's website also contains an FAQ section that informs consumers of the automatic renewal terms and how to cancel, including a hyperlink to create a support ticket online for cancellation.  *See supra* n.2.

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

Here, Plaintiff says the price increase from $499.80 (the 15% discounted price for Plaintiff's initial term) to $588.00 (the regular, non-discounted price for the renewal) was a "material change" and that he supposedly was not provided "clear and conspicuous notice" or "information regarding how to cancel." But, again, Plaintiff pleads no *facts* to establish that TeamViewer increased the price of his subscription without informing him of the price change. *McKee*, 2017 WL 7388530 at *21; *Arnold*, 2020 WL 3469367 at *7. And the invoice Plaintiff received expressly set forth the regular $588.00 list price and the $499.80 "discounted price" that Plaintiff paid, and also stated the "special price of $499.80 is only valid until 18-Sep-2020," after which Plaintiff "will be charged the regular price of $588.00." De Tomasi Decl., Ex. D. That invoice, as well as the reminder email that Plaintiff received two months before his renewal, provided Plaintiff with the "information regarding how to cancel" that he now claims was never provided. Specifically, the invoice reminds Plaintiff that he must cancel at least 28 days before the expiration of his subscription period (*supra* Section II.B), and the reminder email repeats that same information and provides a hyperlink to submit a ticket to cancel. De Tomasi Decl., Exs. C-D; *see also id.* Ex. A (EULA § 13.3 provides that users may terminate subscription by letter, fax, or email, or by contacting Customer Support at www.teamviewer.com/support). In short, Plaintiff has no basis to claim that TeamViewer violated § 17602(d) and his claim based on that provision fails.

### b. No Predicate Claim For Unjust Enrichment

Nor can Plaintiff pin his UCL "unlawful" claim to a common law claim for "unjust enrichment." *Contra* FAC ¶ 26. In the FAC, Plaintiff contends TeamViewer was "unjustly enriched in the amount of $588.00" when it charged him for the Software renewal. *Id.* But "[t]here is no cause of action in California for unjust enrichment." *Durell*, 183 Cal. App. 4th at 1370. And while some courts have allowed "unjust enrichment" claims to proceed as a quasi-contract remedy similar to restitution, such a claim "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Wright v. Charles Schwab & Co., Inc.*, 2020 WL 6822887, at *4 (N.D. Cal. Nov. 20, 2020); *Durell*, 183 Cal. App. 4th at 1370 (existence of a contract barred unjust enrichment theory). Here, an enforceable, binding agreement (the EULA) governs

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

1    Plaintiff's purchase and thus Plaintiff cannot assert a claim for "unjust enrichment."[5]

2                    **c.       No Predicate Claim for Charging Unconscionable Prices**

3           Finally, Plaintiff cannot establish a UCL "unlawful" prong violation by arguing that

4    TeamViewer's auto-renewal policy violates "California common law . . . that proscribe[s] charging

5    unconscionable prices." FAC ¶ 27.  In fact, "common law violation[s]" are "insufficient" to support

6    claim under the UCL's "unlawful" prong.  *Shroyer*, 622 F.3d at 1044; *Teradyne, Inc. v. Astronics*

7    *Test Sys., Inc*., 2020 WL 8173024, at *6 (C.D. Cal. Nov. 6, 2020) (UCL unlawful claim dismissed

8    where "each of [plaintiff's] antecedent causes of actions for its UCL claim are based on common

9    law violations"); *Indus. Bank of Korea v. ASI Corp.*, 2018 WL 6164317, at *19 (C.D. Cal. Oct. 4,

10   2018) ("Moreover, alleged common law violations are insufficient for a UCL claim.").

11          In addition, Plaintiff fails to provide ***any*** explanation or legal support for his claim that

12   charging the standard price for the next year of Plaintiff's TeamViewer subscription, which Plaintiff

13   had every opportunity to cancel, is somehow unconscionable.  *Buley v. Homecomings Fin., LLC*,

14   2016 WL 6138420, at *6 (C.D. Cal. Apr. 22, 2016) (Carney, J.) (dismissing UCL "unlawful" claim

15   because plaintiff "provides no legal support for his assertion that the contract terms were

16   'unconscionable' in any sense").  Nor could he—under California law, where a plaintiff has a

17   "meaningful choice" to avoid paying supposedly "unconscionable" charges, no UCL claim will lie.

18   *See Schnall*, 78 Cal. App. 4th at 1161 ("It is enough to reiterate that Hertz's customers have a

19   'meaningful choice,' because the rental agreement adequately informs renters that if they reject the

20   fuel purchase option and return the rented car with a full tank they will pay no fuel service charge.").

21   Like the plaintiff in *Schnall*, Plaintiff was fully informed—on many different occasions—that he

22   could avoid paying the auto-renewal charge simply by informing TeamViewer of his wish to cancel

23   within 28 days.  *See supra*, Section II.A.  That he failed to do so, and thereby ended up paying for

24   a year's worth of TeamViewer's software that he allegedly did not want, does not somehow render

25   TeamViewer's conduct "unconscionable."

26

27   _____
     [5] The one case cited in Plaintiff's FAC—*Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1853 (2008)
28   —did not involve an express contract governing the plaintiff's purchase.  FAC ¶ 26.  Also, the
     Court of Appeal in that case *rejected* the plaintiff's unjust enrichment claim.

                                                    TEAMVIEWER'S MOTION TO DISMISS
                                                    8:21-CV-00058-CJC-ADS

**2.     Plaintiff's UCL "Unfair" Claim Must Be Dismissed**

Finally, Plaintiff's "unfair" UCL claim fails for the same reasons as his "unlawful" claim. As courts routinely recognize, "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley*, 243 F. Supp. 3d at 1104–05; *see also, e.g.*, *Knowles v. Arris Int'l PLC*, 2019 WL 3934781, at *17 (N.D. Cal. Aug. 20, 2019); *Patt v. Antech Diagnostics, Inc*., 2019 WL 6654078, at *8 (C.D. Cal. July 30, 2019); *Ruberson v. Gerdau Reinforcing Steel*, 2020 WL 3891679, at *4 (C.D. Cal. Apr. 10, 2020).   And here, Plaintiff's "unfair" UCL claim depends on exactly the same practices he contends are "unlawful." *Compare* FAC ¶¶ 26-33 *with* ¶¶ 34-36.  His "unfair" claim thus must be dismissed as well.  *Hadley*, 243 F. Supp. 3d at 1104–05.

Plaintiffs' "unfair" UCL claim also fails because he does not adequately plead any "unfair" conduct on TeamViewer's part.  While the precise definition of "unfair" in the consumer context is somewhat unsettled, the conduct at issue must either (1) be "tethered to specific constitutional, statutory, or regulatory provisions"; (2) be "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," which "requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim"; or (3) "cause substantial consumer injury that is not outweighed by countervailing benefits and which consumers could themselves not have reasonably avoided."  *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1264-73 (2006); *Daugherty v. Am. Honda Motor Co.,* 144 Cal. App. 4th 824, 839 (2006). To be sure, Plaintiff dutifully recites each of these standards in the FAC and claims that TeamViewer's renewal practices are "unfair" under each test. *See* FAC ¶¶ 34-36.  But "recitation of the legal standard and conclusory allegations of a UCL violation do not state an 'unfair' UCL claim." *Wright*, 2020 WL 6822887 at *5; *Hanich v. CitiMortgage, Inc.*, 2015 WL 3889617, at *3 (C.D. Cal. June 24, 2015) (Carney, J.) ("Plaintiff's conclusory allegations are insufficient to show that Defendant's conduct was 'unfair' under any of the three standards applied by California courts."); *Blash v. Wells Fargo Bank*, 2015 WL 12791376, at *3 (C.D. Cal. Feb. 26, 2015) (Carney, J.) (similar).  And while Plaintiff does arguably identify a specific statutory provision he claims

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS

TeamViewer violated, *see* FAC ¶ 36 (identifying violation of "California Business and Professions Code § 17600"), his claim fails for the reasons already described.  *See supra*, Section IV.B.1.a.

## V.    CONCLUSION

For the foregoing reasons, TeamViewer requests that the Court dismiss Plaintiff's FAC in its entirety.

Dated: May 11, 2021

O'MELVENY & MYERS LLP


By:  */s/ Randall W. Edwards*
Randall W. Edwards
Attorneys for Defendant
TeamViewer US, Inc.

TEAMVIEWER'S MOTION TO DISMISS
8:21-CV-00058-CJC-ADS