JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| JACK GERSHFELD, on behalf of himself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>TEAMVIEWER US, INC., and DOES 1–100,<br><br>Defendant. | Case No.: SACV 21-00058-CJC(ADSx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [Dkt. 28]** |

## I. INTRODUCTION

Plaintiff Jack Gershfeld brings this putative class action against Defendant Teamviewer US, Inc. and unnamed Does, alleging violations of California's Unfair

-1-

1  Competition Law ("UCL") and California's Consumer Privacy Act ("CCPA").  (Dkt. 20
2  [First Amended Complaint, hereinafter "FAC"].)

4  On September 19, 2019, Plaintiff purchased a year-long subscription to
5  Defendant's remote-access software.  (*Id.* ¶ 13.)  To complete the purchase, Plaintiff was
6  required to provide his name as well as his credit card number, expiration date, and
7  verification code.  (*Id.*)  Plaintiff alleges that a year later in September 2020, Defendant
8  renewed his subscription without his authorization by disclosing his private credit card
9  information to Defendant's credit card processor.  (*Id.* ¶ 18.)  Plaintiff alleges that the
10 unauthorized exfiltration and disclosure of his personal information to a third party
11 violated the CCPA.  (*Id.* ¶¶ 19–23); *see* Cal. Civ. Code § 1798.150.  He also alleges that
12 Defendant violated the UCL by unlawfully charging him for services that he did not
13 authorize, need, or want.  (*Id.* ¶¶ 25–37.)  In opposition, Defendant asserts that Plaintiff
14 was informed multiple times that his subscription would automatically renew unless
15 "either party notifie[d] the other party no less than twenty-eight (28) days prior to the end
16 of the [subscription term]."  (Dkt. 30 [Declaration of Helaine De Tomasi, hereinafter
17 "Tomasi Decl."]; Dkts. 30-2–30-5 [Exhibits].)[1]

---

[1] Defendant's exhibits include a copy of its End-User License Agreement as well as screenshots of its website and documents it sent to Plaintiff.  While the Court ordinarily cannot consider documents outside the pleadings when considering a motion to dismiss, a court may consider "documents attached to the complaint" or "incorporated by reference in the complaint."  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Id.*  Here, Plaintiff's complaint includes a screenshot of Defendant's website and his claims depend on the communications contained in Defendant's exhibits.  (*See* SAC ¶¶ 13–15, 18–20.)

Plaintiff contends that Defendant's exhibits are hearsay and were improperly authenticated because they were introduced by the declaration of Ms. Tomasi, who did not begin working for Defendant until shortly after Plaintiff made his purchase.  (Dkt. 32.)  But a declarant's personal knowledge requirement is met when she is familiar with her employer's policies and testifies that certain documents are true and correct copies of those policies.  *Safley v. BMW of N. Am., LLC*, 2021 WL 409722, at *3 (S.D. Cal. Feb. 5, 2021).  Furthermore, the exhibits are not hearsay because they are not offered to prove the truth of the matter asserted within the communications, but rather to prove whether Plaintiff had notice of Defendant's automatic-renewal policy.

Now before the Court is Defendant's motion to dismiss Plaintiff's FAC. (Dkt. 28 [hereinafter "Mot."].) For the following reasons, Defendant's motion is **GRANTED**.[2]

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. 544, 555 (2007).

//
//

---

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for July 12, 2021, at 1:30 p.m. is hereby vacated and off calendar.

## III.  DISCUSSION

Defendant moves to dismiss Plaintiff's claims brought under the CCPA and the UCL.  Dismissal of both claims is warranted.

### A.  CCPA

The CCPA provides a private right of action to consumers whose "personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices."  Cal. Civ. Code § 1798.150(a).  In other words, to succeed on a CCPA claim, a plaintiff must allege that his personal information was subject to "unauthorized . . . disclosure as a result of" a business's failure "to implement and maintain reasonable security procedures and practices."  *Id.*  Plaintiff has not made such an allegation here.

Plaintiff alleges that Defendant stored his personal information "in a nonencrypted and nonredacted fashion," but the disclosure of Plaintiff's personal information was not caused by this practice.  (FAC ¶ 16.)  Nor was the disclosure of Plaintiff's information unauthorized.  To the contrary, Defendant relayed Plaintiff's personal information to its credit card processor when it automatically renewed Plaintiff's subscription in accordance with Plaintiff's authorization.  When Plaintiff chose his payment method while purchasing his subscription from Defendant, he agreed to Defendant's End-User License Agreement ("EULA"), which states that Plaintiff's subscription would automatically renew unless "either party notifie[d] the other party no less than twenty-eight (28) days prior to the end of the [subscription term]."  (Dkt. 30-2 [hereinafter, "EULA"] ¶ 13.1.)  Then, after clicking "Proceed to Checkout," he was directed to a "Summary" page which stated again in bold letters that his "**subscription will**

**automatically renew** every 12 months, unless [he] terminate[s] [it]." (Dkt. 30-3 [Website Screenshots].) After completing his purchase, Plaintiff received an invoice repeating Defendant's automatic-renewal policy. (Dkt. 30-4.) And finally, on July 21, 2020—two months before Plaintiff's subscription would renew—Defendant sent him an email reminder that he had to cancel his subscription if he did not want the automatic renewal to occur. (Dkt. 30-5.) Defendant's disclosure of Plaintiff's personal information was not a disclosure without authorization, and it was not caused by Defendant's failure to implement reasonable security procedures and practices. *See* Cal. Civ. Code § 1798.150(a).

### B. UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 (false or misleading advertisements)." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Plaintiff alleges that Defendant has violated the UCL's unlawful and unfair prongs.

#### 1. Unlawful Prong

The UCL's "unlawful" prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Clevenger v. Riviana Foods Inc.*, 2019 WL 8167916, at *4 (C.D. Cal. Oct. 22, 2019) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)). "By proscribing 'any unlawful' business practice, the UCL permits injured consumers to 'borrow' violations of other laws and treat them as unfair competition that is independently actionable." *Id.*

(quoting *Cel-Tech*, 20 Cal. 4th at 180); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010) ("Virtually any law—federal, state or local—can serve as a predicate action under [the UCL]."). Plaintiff alleges that Defendant violated the UCL's unlawful prong through unjust enrichment, unconscionable pricing, and violation of California's Automatic Renewal Law ("ARL"). *See* Cal. Bus. & Prof. Code § 17602.

### a. Unjust Enrichment

California courts appear to be split regarding whether unjust enrichment is an independent cause of action or simply a general principle underlying several different causes of action that entitles a plaintiff to restitution. *Compare Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("There is no cause of action in California for unjust enrichment."), *with Lectodryer v. Seoulbank*, 77 Cal. App. 4th 723 (2000) (affirming jury verdict in favor of plaintiff in suit for unjust enrichment); *and Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996) (recognizing that plaintiff may advance stand alone claim for unjust enrichment). Like many other courts in this district, the Court is persuaded that unjust enrichment is not a separate cause of action in California. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mrtg., Sales Practices, and Prods. Liab. Litig.*, 2010 WL 4867562, at *39 (C.D. Cal. Nov. 30, 2010); *In re DirecTV Early Cancellation Litig.*, 2010 WL 3633079, at *27 (C.D. Cal. Sept. 7, 2010). Moreover, unjust enrichment is not available "when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *Durell*, 183 Cal. App. 4th at 1370 ("As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract."). Here, Plaintiff's rights were governed by the EULA, which stated that Plaintiff's subscription would automatically renew without a subsequent cancellation. Accordingly, Plaintiff may not pursue a standalone claim for unjust enrichment.

Even if the Court were to consider Plaintiff's standalone claim for unjust enrichment, it still fails. *See Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1122 (N.D. Cal. 2013) (construing a plaintiff's claim for unjust enrichment "as one for restitution, which is recognized under California law"). To state a claim for unjust enrichment or restitution, a plaintiff "must plead receipt of a benefit and the unjust retention of the benefit at the expense of another." *Id.* But Plaintiff has failed to allege that Defendant received any benefit unjustly. Rather, the EULA and pages from Defendant's website establish that before purchasing his subscription, Plaintiff was fairly warned that his subscription would automatically renew.

### b. Violation of California's ARL

Plaintiff also alleges that Defendant violated four separate sections of the ARL. The Court disagrees. First, § 17602(a)(1) requires a business to "present the automatic renewal offer terms . . . in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer." Cal. Bus. & Prof. Code § 17602(a)(1). Defendant did not violate this provision. Before Plaintiff purchased his subscription, he agreed to the EULA which informed him that his subscription would automatically renew unless "either party notifie[d] the other party no less than twenty-eight (28) days prior to the end of the [subscription term]." (EULA ¶ 13.1.) And before clicking "Proceed to Checkout" during his purchase, Plaintiff was directed to a "Summary" page which stated again in bold letters that his "**subscription will automatically renew** every 12 months, unless [he] terminate[s] [it]." (Dkt. 30-3 [Website Screenshots].) Defendant thus presented the automatic-renewal offer terms in a clear and conspicuous manner before Plaintiff's purchase was complete. *Lopez v. YP Holdings, LLC*, 2019 WL 6354387, at *4 (C.D. Cal. July 9, 2019) (finding no violation of § 17602(a)(1) when "[t]he language of the

agreement explicitly states that '[t]he term of this Agreement will ***automatically renew***, unless terminated [] as set forth in this Agreement'").

Second, § 17602(a)(2) prohibits charging a consumer "for an automatic renewal . . . without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms," including that an offer "is made at a promotional or discounted price for a limited period of time." Cal. Bus. & Prof. Code § 17602. Again, Plaintiff gave his express consent at the time of purchase by agreeing to the EULA and completing the purchase despite the bolded automatic-renewal warning on the "Summary" page. *Hall v. Time, Inc.*, 2020 WL 2303088, at *4 (C.D. Cal. Mar. 13, 2020) (finding affirmative consent when "Plaintiff clicked through two separate pages containing the automatic renewal agreement before deciding to purchase her People magazine subscription"). Defendant also provided Plaintiff with an invoice stating this his subscription was purchased at a discounted price and indicating the non-discounted price. (Dkt. 30-4.)

Third, § 17602(a)(3) requires businesses "to provide an acknowledgment that includes the automatic renewal offer terms . . . , cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(a)(3). Defendant supplied this information. In an email sent two months before Plaintiff's subscription would renew, Defendant informed Plaintiff of the date on which his subscription would automatically renew and provided a link for Plaintiff to cancel his automatic renewal. (Dkt. 30-5.)[3]

---

[3] Relatedly, Plaintiff also alleges violations of § 17602(b) and (c), which require businesses to provide a "cost-effective, timely, and easy-to-use mechanism for cancellation," and, when consumers make their purchase online, "a mechanism for termination exclusively online." Cal. Bus. & Prof. Code § 17602(b–c). Plaintiff's opposition does not respond to Defendant's motion to dismiss these claims and thus the Court need not consider them. *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). In any event, Defendant has complied with the statutory requirements based on the link provided in its email.

Fourth, § 17602(d) provides that when there is "a material change in the terms of the automatic renewal . . . , the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer. Cal. Bus. & Prof. Code § 17602(d). Again, Plaintiff was informed of the price increase by Defendant's invoice and he was told how to cancel his subscription in the email sent two months before the automatic renewal occurred.[4]

### 2.   Unfair prong

Plaintiff alleges that Defendant's business practices were "unfair" under the UCL because Defendant charged Plaintiff $558 when it automatically renewed his subscription. California courts have articulated two main tests for determining whether conduct is unfair under the UCL. Plaintiff fails to allege facts demonstrating that relief would be plausible under either of them.

One line of authority defines "unfair" as "prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006). The other line of authority requires that the business practice violate a "public policy which is . . . tethered to specific constitutional, statutory, or regulatory provisions." *Id.* Here, Plaintiff does not allege any prohibitory conduct or specific constitutional,

---

[4] Plaintiff also alleges a violation of the UCL based on Defendant's unconscionable pricing. But Plaintiff's complaint does not allege a single fact explaining why Defendant's pricing was unconscionable. This is especially damning considering that Plaintiff had a "meaningful choice" when determining whether to purchase Defendant's product and agree to Defendant's automatic-renewal policy. *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1161 (2000). Dismissal of this claim is warranted.

statutory, or regulatory provision as is required to state a claim under the UCL for "unfair" business practices. Plaintiff's failure to cancel his subscription's automatic renewal is insufficient.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**. "Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting Plaintiff to amend would be an exercise in futility." *El Dorado Cmty. Serv. Ctr. v. Cnty. of Los Angeles*, 2017 WL 6017297, at *3 (C.D. Cal. Jan. 3, 2017). Plaintiff has already had an opportunity to amend his complaint and still failed to provide the Court with any facts or argument indicating that relief is plausible. *See id.* Accordingly, the Court concludes that leave to amend the FAC would be futile and **DENIES** Plaintiff leave to amend. Plaintiff's FAC is **DISMISSED WITH PREJUDICE**.

DATED: June 24, 2021

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE